**STATE of Maine**

v.

**Stillman E. WILBUR, Jr.**

Supreme Judicial Court of Maine.

June 8, 1971.

Peter W. Culley, Chadbourn H. Smith, Asst. Attys. Gen., John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for plaintiff.

Gerard Williams, Farmington, for defendant.

Before DUFRESNE, C. J., and WEBBER, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

Defendant appeals from his conviction of the crime of murder. We will deal with the points of appeal in the order in which they are presented for our consideration.

"1. The Court erred in denying the Defendant-Appellant's motion for a new trial."

■ On the basis of circumstantial evidence and the admissions and confession of the defendant, the jury could properly have concluded that on January 30, 1966 one Claude Hebert was beaten to death by the defendant in Hebert's motel room; that the defendant employed the use both of his fists and a blunt instrument to inflict bodily injuries of such severity that Hebert died within a few minutes. The theory of the defense was that the homicide occurred while the defendant was swayed by the heat of passion suddenly provoked by an indecent overture on the part of Hebert. The jury in declining to reduce the crime from murder to manslaughter may either have disbelieved the evidence tending to support the claim of sudden provocation or have concluded that the nature, extent and severity of the beating administered were inconsistent with any claim that all of the unlawful acts of the defendant occurred while he was still in the throes of such an ungovernable passion as might affect the conduct of a reasonable man. On this posture of the evidence there was no occasion for the trial court to grant the motion for new trial.

"2. That the record shows that the Defendant failed to waive his constitutional right to have the admissibility of certain evidence against him determined in the absence of the jury. The transcript at pages 391–395 shows that the Defendant failed to give an 'audible answer' to the court's rather detailed statement and question as to his waiving his constitutional rights. It further shows that when the court asked the Defendant 'You mean, you would like to have this testimony given without the court first ruling on it in the absence of the jury?' the record does not indicate that he either understood the question or made an affirmative answer. Counsel for the defendant states 'I believe he does.' (understand). And the Court Stenographer said 'I thought I heard him say, 'Yes'. Permitting the testimony to be presented without a record clearly showing that the defendant understood and waived his constitutional right, however unintentional, was obvious error."

■ The record discloses that before either any inculpatory admissions or the written confession of the defendant were admitted in evidence, the Justice below in the absence of the jury engaged in an extensive colloquy with both the defendant and his counsel, the manifest purpose of which was to ascertain that the defendant was fully aware of his right to have the voluntariness of these admissions and confession preliminarily determined by the Court. It became apparent during the colloquy that defendant and his counsel had made a considered decision not to object to the State's evidence but in fact to urge its admission without challenge to voluntariness. As the case subsequently developed the relationship of this decision to defense strategy became evident. The defendant was thereby enabled to get before the jury his basic theory that the crime had been committed in the heat of passion upon sudden provocation without the necessity of his becoming a witness at trial in his own behalf and thereby submitting to cross-examination. In short, the instant case presents a situation in which a dimension is added which goes beyond the mere question as to whether or not there was an intelligent and understanding waiver by defendant of the right to independent determination of voluntariness by the trial court. Here the trial court was faced with

an affirmative request made on behalf of the defendant that the evidence be admitted in order that he might have the advantage of certain exculpatory aspects thereof. We hold that the Justice below discharged his full duty by giving an accurate and comprehensive explanation of the right to a preliminary hearing on the issue of voluntariness in the absence of the jury. We further hold that the defendant cannot now be heard to complain because his request that the evidence be admitted was honored. In fact, the arbitrary exclusion of State's evidence which was material and relevant as bearing on the possible reduction of the crime from murder to manslaughter and which defendant desired to have in the case would have constituted reversible trial error. Conversely, there was no error and no constitutional deprivation in admitting the evidence under the circumstances of this case.

"3. The defendant-Appellant was not fully informed of his right to counsel as required by the Sixth amendment of the U. S. Constitution, nor did he waive his right, prior to questioning by Officers Vigue, Lander and Carrier, and it was obvious error to admit in evidence their testimony as to statements made by the Defendant."

The issue sought to be raised goes to the voluntariness of the admissions and confession, the admission of which into evidence is discussed above. No further elaboration of this point is required. For reasons stated the defendant elected not to challenge the method by which the proffered evidence was procured.

"4. Testimony of conclusions as to both the presence of blood and violence, inflamatory in nature, and unnecessary to the presentation of the State's case was so great as to create a climate in which the jury could not render a fair and impartial verdict." [1]

The evidence discloses that the victim died as the result of a physical beating in the course of which prolonged and inordinate force was applied. In the absence of any eye-witness, the State was required to depend upon circumstantial evidence tending to prove the method by which the crime was committed and to negative the defendant's contention that his unlawful acts were performed in the heat of passion. The evidence given by the medical examiner, investigating police officers and others who made observations at the scene with respect to visible wounds on the body of the victim and the location and extent of blood stains and spatters in the room was properly received as bearing on the nature and extent of the fatal assault. We note that but one objection was made with respect to such testimony, which objection was sustained. There is no abuse of discretion and certainly no constitutional deprivation in permitting a jury, without objection, to hear from a number of witnesses a description of the telltale signs of a bloody and atrocious homicide, merely because such testimony may be to some extent cumulative. See State v. Turmel (1952) 148 Me. 1, 88 A.2d 367.

"5. The court erred in not declaring of its own motion a mistrial upon the highly prejudicial statement of Officer Jordan that the bottles which the State was trying to suggest were murder weapons had on them 'minute areas of what appeared to be blood.' Ordering the answer stricken and telling the jury to disregard it did not remove the highly prejudicial nature of the statement. Transcript at page 134."

No motion for mistrial was made and there was clearly no occasion for the

1. We have omitted restating the balance of the 4th point of appeal which merely states at length examples from the testimony of the kind of evidence complained of.

trial court to order a mistrial *sua sponte*. The defendant received more than he was entitled to when the answer was ordered stricken and the jury instructed to disregard it. There was no legal requirement which would prevent an experienced police officer with special training in fingerprint identification and other investigative techniques from testifying that he observed on an article found in proximity to the victim's body "minute areas of what appeared to be blood." Because of common familiarity with the appearance of stains caused by blood, even ordinary and less experienced witnesses are permitted in appropriate circumstances to testify that certain stains on clothing or other articles look like or resemble blood stains. See discussion in Underhill's Criminal Evidence, 5th Ed., Vol. 3, Sec. 656, Page 1588; 23 C.J.S. Criminal Law § 876 p. 452; Wimis v. State (1960) 216 Ga. 350, 116 S.E.2d 547; State v. Willis (1969) 4 N.C.App. 641, 167 S.E.2d 518.

> "6. That the court erred in admitting State's Exhibit No. 37."

■ This exhibit was a "light blue shirt with blood stains on it" which was found by defendant's landlady about 3½ months after the homicide concealed in a closet which had been used by defendant during his occupancy of his rented room. She identified the shirt as looking like one of the shirts she had seen the defendant wearing. She was able to state positively that the shirt did not belong to anyone in her family. The only tenant of the room who had occupancy after that of the defendant disclaimed ownership of the shirt and any knowledge with respect to it. A pathologist identified the blood stains as "Group A human blood," the same blood type as that of the stains found on the clothing of the deceased. When the exhibit was offered in evidence, objection was made on the ground that discovery of the

evidence was remote in time and the exhibit was "not connected up sufficiently to be relevant in evidence." The foundation was properly laid to make the exhibit properly admissible as a piece of circumstantial evidence. Its weight was thereafter for the jury.

> "7(a) That the court erred in charging 'I am fortunately able to tell you that if I do make an error as to law, a higher court on appeal can correct that error.' " [2]

■ No objection was taken to this instruction and no issue is properly presented on appeal. M.R.Crim.P., Rule 30(b). Lest it be asserted that the alleged error is highly prejudicial and well calculated to result in manifest injustice, we add that the quoted statement was accurate and was properly employed in connection with the Court's admonition that the jury must accept the law as given by the Court. See Brine v. State (Me.1970) 264 A.2d 530.

> "7(b) That the charge to the jury in relation to the testimony of Irene Farrand left it for the jury to determine what was hearsay and what was not."

■ This point of appeal misinterprets the action of the Justice below. He submitted to the jury a preliminary question of fact as to whether or not a person placing calls with the witness, a telephone operator, was or was not the defendant. An affirmative finding by the jury was amply supported by evidence. Moreover, the alleged error is not properly assigned under Rule 30(b).

> "7(c) That the reference by the court to the defendant as 'the killer' when stating 'Bearing in mind, as I have said, that there has been an unlawful killing, that is one not justified in self defense, then the

2. We omit as unnecessary to this opinion the preamble or preliminary statement which introduces the points of appeal set forth in the several sub-paragraphs under Point #7.

killing is presumed to be with malice aforethought, and the burden is then upon the defendant, the killer, to satisfy the jury that it was not done with malice aforethought either express or implied.' "

We treat the point as though it alleged error. Here again there was no compliance with Rule 30(b). We review the instruction only because there might be thought to be constitutional implications. The single sentence quoted in the point of appeal cannot fairly be read out of context. The jury had already been thoroughly instructed as to the elements of unlawful homicide, murder and manslaughter and the burden of proof placed upon the State. The quoted instruction was predicated by the Court upon the assumption that the jury *had first been satisfied* that the State had proved a voluntary and intentional killing *beyond a reasonable doubt.* The Court had then reached the point of discussing the reduction of murder to manslaughter and the burden of proof with respect thereto. The quoted portion of the instruction omits the final words of the sentence which added, "and he must do that, he must do this by a fair preponderance of all the evidence."

We take judicial notice of the fact that historically a charge substantially in this form has been frequently given in the trial of murder cases but has not heretofore been challenged. The issue being now and for the first time squarely raised, we take the occasion to examine the development of Maine law and the nature and effect of the presumption of malice which arises once the State has proved beyond a reasonable doubt that the defendant committed a

voluntary and intentional homicide, not justifiable or excusable, and the remaining issue is whether or not the homicide was committed upon sudden provocation and in the heat of passion so as to reduce it from murder to manslaughter.[3]

In 1854 capital punishment and degrees of murder had not yet been abolished in this state. In State v. Conley (1854) 39 Me. 78, 87, 88 the Court, although not required in review of a conviction of murder in the second degree to deal with the procedural effect of the presumption of malice on the burden of proof, used language which evidenced the acceptance of the concept that there is but one basic crime, felonious homicide, of which degrees are recognized and established. Tenney, J., writing for a unanimous Court, used these significant expressions:

"By the common law, felonious homicide is the killing of any human being without justification or excuse. * * * *It is divided* into manslaughter and murder. * * *

When a party is charged in an indictment with the crime of murder, the *felony actually committed is the same,* whether it has all the elements of murder in the first or second degree, or whether it is wanting in the criterion of murder, and is therefore manslaughter only. *The two lower degrees of felonious homicide* are embraced in the charge of the higher offense, and a conviction of either of the three, or an acquittal under the charge properly made, is a bar to any other indictment *for the same acts.*" (Emphasis ours) [4]

---

3. In State v. Millett (Me.1971) 273 A.2d 504 we clarified the procedural requirements where the defense of self-defense is tendered. Because this defense goes to the *basic issue of guilt or innocence of an unlawful homicide,* we limited the burden imposed upon the defendant to that of coming forward with evidence of such character and quality as would generate the issue.

4. In the earlier case of State v. Neal (1854) 37 Me. 468, the charge was assault with intent to murder, no homicide occurring. Since the gravamen of the offense is the *specific intent* accompanying the assault, it was held that the intent alleged and no other must be proved. There was no evidence of *express malice* and, in the absence of homicide, the State was not aided by any presumption

Some of this language was again quoted and *Conley* was cited with evident approval in Thompson, Petr. (1945) 141 Me. 250, 255, 42 A.2d 900, 901 and State v. Park (1963) 159 Me. 328, 331, 193 A.2d 1, 3. In *Park* the evidence was barren of any proof of sudden provocation.

As early as 1857 this Court declared in State v. Knight, 43 Me. 11, 137 that, with the unlawful killing proved beyond a reasonable doubt, "if the accused would reduce the crime below the degree of murder, the burden is upon him to rebut the inference of malice, which the law raises from the act of killing, by evidence in defense." This "burden" was imposed in State v. Turmel, supra, and in State v. Duguay (1962) 158 Me. 61, 75, 178 A.2d 129. It has always been understood as requiring proof by a fair preponderance of all of the evidence, that is, that the evidence supportive of reductive factors (sudden provocation and heat of passion) be believed by the factfinder and be of such nature and quality as to make it more probable than not that these factors were operative. In Brine v. State, supra 264 A. 2d at page 534, after again reexamining the instruction and noting its even earlier origin, we said, "We are not persuaded that this which has been the rule in Maine since 1834 should be abandoned." We are still of that view.

We find nothing in our older cases which suggests a contrary result. In State v. Verrill (1867) 54 Me. 408, the defendant was convicted of murder in the first degree, then carrying the death sentence, upon an indictment charging homicide with malice aforethought. It was contended that the indictment would not support the verdict. It was held that (a) it was not necessary to charge the means by which the homicide was effected, or (b) that it was committed with *express* malice afore-

thought. The Court recognized that first and second degree murder were not separate crimes but merely degrees of felonious homicide. The Court had no occasion to consider the status of manslaughter or the burden of reduction problem which arises in the instant case. Nothing in State v. Sprague (1938) 135 Me. 470, 475, 199 A. 705 tends to negate the existence of the presumption or its procedural effect. Here the charge was murder and the State was required to prove malice either by direct proof of express malice or by use of the presumption or both. It was there held that statements made by the respondent were admissible as part of the State's attempted proof of express malice. In State v. Wardwell (1962) 158 Me. 307, 324, 183 A. 2d 896 we again affirmed the rule and imposed the "burden" on the defendant to "rebut" the presumption of malice, although we had no occasion to comment on the quantum of required proof.

In State v. McCarthy (Me.1969) 256 A. 2d 660, 662 we were not called upon to consider the effect of an instruction imposing a burden of persuasion upon the defendant since no such instruction was given. We recognized the concept of "reduction" from one degree of homicide to another as being well established in our law. We do not read *McCarthy* as dispositive of the issue directly presented in the instant case.

■ The presumption rests upon the foundation of sound public policy. It reflects the public interest in the administration of justice and recognizes the practical impossibility in a vast number of cases of meeting a mere suggestion of sudden provocation and heat of passion by negating proof beyond a reasonable doubt. State v. Davis (1940) 6 Wash.2d 696, 108 P.2d 641, 648. It stems from and accords with the sacredness of the right to life and the aw-

of implied malice. Accordingly, a verdict of guilty of assault with intent to murder was set aside. The Court, however, recognized the existence of the presumption of malice implied from intentional

homicide, whenever such is shown, and the procedural consequences requiring the defendant to demonstrate "circumstances of alleviation, to be made out by the prisoner" upon the whole evidence.

ful responsibility of one who has been proven beyond a reasonable doubt to have unlawfully and intentionally taken the life of another. We are satisfied that such a policy presumption, bearing as it does not on the guilt or innocence of felonious homicide but only upon the degree of and possible punishment for such homicide, should be accorded such procedural force as is required to make it truly effective, that is, to cast the burden of persuasion upon the defendant to prove sudden provocation and heat of passion by the fair preponderance of all of the evidence.

We face squarely the fact that the majority rule is otherwise and that in many jurisdictions the defendant is required to do no more than generate the issue leaving the State, if it can, to negate the reductive factors by proof beyond a reasonable doubt. We are not persuaded to this view which tends to emasculate the presumption and defeat the very purpose for which sound public policy has raised it. "Does it not, and must it not necessarily still stand, though we may have some doubts of its truth? That which exists is not destroyed simply because it may be enveloped in a thin cloud." State v. Lawrence (1870) 57 Me. 574, 584. (Burden of proving defense of insanity).

As recently as 1969 the North Carolina Court reaffirmed its position, maintained for over one hundered years, that where under stated conditions the presumption of malice is raised, the burden of proof shifts to the defendant to reduce murder to manslaughter. The quantum of proof required is "to the satisfaction of the jury." This proof requirement may equal or exceed the requirement of proof by the fair preponderance of the evidence and to that extent is more onerous than that which we impose. State v. Freeman (1969) 275 N.C.

662, 170 S.E.2d 461. See also Gardner v. State (1960) 216 Ga. 146, 114 S.E.2d 852.

We have not overlooked the implications which might be thought to flow from In Re Winship (1970) 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, a case involving proof of juvenile delinquency, in which the Court stated, "(W)e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." As already noted, no burden is imposed upon defendant until the State has first convinced the jury beyond a reasonable doubt that defendant is guilty of a voluntary and intentional homicide. We emphasize that the issue at this point is no longer guilt or innocence of felonious homicide but rather the degree of the homicide.

■ This case was tried in 1966. At that time the prevailing law found expression in Leland v. Oregon (1952) 343 U.S. 790, 75 S.Ct. 1002, 96 L.Ed. 1302, never overruled, in which the Supreme Court declined to disturb an Oregon requirement that the defendant in a criminal case assume the burden of proving his mental incapacity to commit the crime. We see no occasion to anticipate either that *Winship* will be so extended as to reach the procedural requirements of *Conley* and *Knight* as now interpreted or that, even if so extended, it will be applied retrospectively.[5] Accordingly, we can discover no error in the charge in the instant case.

"7(d) That by reason of the unreasonable delay in sentencing the Defendant the Superior Court lost jurisdiction of the person of the respondent."

---

5. Even though the instant case is before us on *direct appeal*, the *question of retrospectivity* remains open in view of the language and reasoning of Williams v. United States (1971) 401 U.S. 646, 91

S.Ct. 1148, 28 L.Ed.2d 388; Mackey v. United States (1971) 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404; and Hill v. California (1971) 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484.

The jury rendered its verdict on June 4, 1966. On June 8, 1966 the Court advised defendant of his right to appeal and in open court an appeal was immediately filed. The defendant being indigent, the Court then appointed counsel to represent defendant on the appeal. The Court then afforded counsel an opportunity to bring any other matters to the Court's attention. Nothing further being presented, the Court ordered that defendant be held without bail pending the final determination of his appeal.

On July 5, 1966 the Court convened a special session for the purpose of sentencing the defendant. The record shows that an informative colloquy occurred, the pertinent portions of which we quote as follows:

"THE COURT: This special term of session of this Court was called, as counsel know and as I think Mr. Wilbur knows, for the reason that I have learned that I was in error in not imposing sentence upon Mr. Wilbur before his appeal. I was unaware, I am sorry to say, of the fact that the last legislature repealed the statute which required sentencing upon convictions of murder to be deferred until the appeal had been decided in the Law Court. A rule which was stated by our Law Court in State v. Chase. I believe it is now my duty, in spite of the fact that notice of appeal has been filed, to impose sentence at this time. And I will now ask, Mr. Ryan, if the State has any comment to make or anything to say concerning sentence?

"COUNTY ATTORNEY: No, Your Honor, other than to suggest that the State does make the motion now that sentence be imposed.

"THE COURT: Do counsel for the defense have anything they would wish to say concerning sentence or why sentence should not be imposed, or regarding the situation?

"MR. SEWALL: May it please the Court, it is the position of the defendant that sentence should, in fact, have been imposed at the last term, and that since the May Term finally adjourned, I believe it was on June 15, 1966, that this respondent has been in custody wrongfully. And it is the purpose of the defendant and his counsel to test the legality of his confinement to this time by appropriate processes. And we would further state; we don't believe that this special term of court called for today does have jurisdiction to sentence.

"THE COURT: May I ask you then, for the record, as I think I should, Mr. Sewall, if you were—if you yourself, or if Mr. Rowe to your knowledge was aware of the fact that the legislature had repealed the statute I referred to which requires sentence in murder cases to be deferred if there is appeal; if you were aware of that at the time your appeal was entered and the term of court was adjourned?

"MR. SEWALL: Yes, Your Honor, the defendant was aware of that. In fact, the defendant was advised by me on the last day when he appeared before the Court that sentence would be imposed at that time. And it came as a surprise to both of us when sentence was not imposed.

"THE COURT: And I think it fair, then, isn't it, that the record should show that you did not move for sentence?

"MR. SEWALL: That is true.

"THE COURT: Nor in any way inform the Court that it was the Court's duty to impose sentence at that time.

"MR. SEWALL: That is correct, Your Honor. It was my feeling and Brother Counsel's feeling that it not only did not require that, but required the contrary.

"THE COURT: And the defendant himself apparently personally was aware of that."

15 M.R.S.A., Sec. 1701, before repeal, had provided that a sentence to imprisonment for life must be deferred until after final adjudication of a pending appeal. This statute was repealed by P.L. 1965, Ch. 356, Sec. 54 effective December 1, 1965. Thereafter the time for sentence was governed by M.R.Crim.P., Rule 32(a).

"(a) Sentence. Sentence shall be imposed *without unreasonable delay*, provided however, the court may suspend the execution thereof to a date certain or determinable. * * *" (Emphasis supplied)

Glassman, Maine Practice, Comment § 32.1 contains the following statement: "Despite the language of the rule, the court has a great deal of discretion concerning the time at which sentence shall be imposed. It is an 'unreasonable delay' which is proscribed. It has been noted that a delay in sentencing 'must partake of the purposeful and oppressive, or even smack of deliberate obstruction on the part of the government before relief will be granted.' (United States v. Grabina [1962] 2 Cir., 309 F.2d 783, 786)." The Comment accurately states the applicable law. There was clearly no "unreasonable delay" or abuse of discretion in the instant case. It is obvious that a motion for sentence or a suggestion to the Court by defendant immediately following conviction, if accompanied by information with respect to the recent change in the law, would have been acted upon without any delay whatever. The defendant under these circumstances can scarcely be heard to complain or assert prejudice. There was no loss of jurisdiction of the person of the defendant—indeed, the argument borders on the frivolous.

"7(e) That the court erred in appointing a State Trooper as an interpreter in violation of the requirements of Rule 28(b) Maine Criminal Rules."

The point is neither briefed nor argued and finds no support in the record. No testimony was adduced through an interpreter. We treat the point as abandoned.

The defendant filed in the Law Court a motion to amend the Statement of Points on Appeal. The practice of amending a Statement of the Points on Appeal other than in the Superior Court from which the appeal originates is not to be encouraged, and under ordinary circumstances would not be permitted. Nevertheless, bearing in mind the unusual circumstances that have existed in the prosecution of this appeal and the fact that appeal has already been long delayed, and having regard also to the fact that the State had sufficient notice of the proposed amendment so as to be able to brief the points, we elected to allow the amendment and treat the additional points as properly raised. Upon careful review, however, we find no necessity for dealing with the several points with particularity.

Some complaints are made with respect to the instructions given to the jury, complaints which are additional to those already considered in this opinion. It suffices to say that we have carefully considered the instructions in their entirety and are satisfied that they constitute a careful, thorough and accurate statement of the law applicable to this case. There is a total absence of that plain error tending to create manifest injustice which alone would justify reversal in the absence of compliance with Rule 30(b).

Defendant seeks to assert the inadequacy of the representation of his trial counsel. This issue is not properly raised upon direct appeal. State v. Pullen (Me., 1970) 266 A.2d 222, 231; State v. Lund (Me., 1970) 266 A.2d 869, 872. We note in pass-

ing, however, that the transcript of the proceedings makes it apparent that the case was well and diligently tried by competent and experienced counsel. Our words in Pullen with only slight alteration seem appropriate here. "In other words, it is not enough that counsel's strategy did not result in a verdict of (guilty of manslaughter)." Upon the evidence such a reduced verdict would seem to be the most favorable result for which the defendant could reasonably have hoped.

We have considered all other points raised or sought to be raised upon this appeal and find them without merit.

The entry will be

Appeal denied.

WEATHERBEE, J., did not sit.