**Stillman E. WILBUR, Jr., Petitioner, Appellee,**

v.

**Garrell S. MULLANEY et al., Respondents, Appellants.**

No. 72–1348.

United States Court of Appeals, First Circuit.

Argued Jan. 3, 1973.

Decided Feb. 14, 1973.

---

**22.** Spinelli v. United States, 323 U.S. 410, 438–439, 89 S.Ct. 584, 21 L.Ed.2d 637 (Fortas, J., dissenting).

---

Vernon I. Arey, Asst. Atty. Gen., with whom Fernand LaRochelle, Asst. Atty. Gen., was on brief, for appellants.

Peter J. Rubin, Portland, Me., by appointment of the Court, with whom Bernstein, Shur, Sawyer & Nelson, Portland, Me., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Petitioner Wilbur was convicted in the Maine Superior Court of the murder of one Hebert as a result of a beating. Wilbur did not take the stand. The principal evidence against him was his statement to the police, the admissibility of which is not presently controverted, that he did the act. This concession was coupled with an assertion that he had not intended to kill, and that the whole episode was the spontaneous result of anger provoked by a homosexual overture by Hebert. As to this the court placed the burden upon the petitioner. It charged the jury,

" 'In all cases where the unlawful killing is proved beyond a reasonable doubt, and where there is nothing in the circumstances of the case to explain, qualify or palliate the action, the law presumes it to have been done with malice aforethought. And if the accused, that is the defendant, would reduce the crime below the degree of murder, the burden is upon him to rebut the inference which the law raises from the act of killing, by evidence in defense.' It is again, [sic, not?] I must say, that he must call witnesses to the stand in defense. But it means that from all the evidence in the case he must be able to satisfy you by a fair preponderance of the evidence that . . . although he killed, and although he killed unlawfully, if such is the case, he killed in the heat of passion upon sudden provocation, as I shall explain hereafter. And if such were your findings, then the respondent, the defendant, would be . . . guilty of manslaughter and not murder."

It is common ground that this charge was in accord with what has been the law of Maine for a hundred years. Wilbur did not take exception to the charge at trial. On appeal, however, the Supreme Judicial Court, noting possible constitutional implications, considered and rejected Wilbur's later voiced objection. State v. Wilbur, Me., 1971, 278 A. 2d 139.

While the appeal was pending the Supreme Court decided In re Winship, 1970, 397 U.S. 358, 90 S.Ct. 1068, 25 L. Ed.2d 368. Although the issue there was the limited one whether a state might prove juvenile charges by a preponderance of the evidence rather than by proof beyond a reasonable doubt, the Court concluded with ringing and unmistakable language.

"Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364, 90 S.Ct. at 1073.

In affirming the correctness of the charge which imposed a burden on the defendant, the Maine court concluded with a reference to *Winship*, but after observing that it had "not overlooked" the implications of that case, dismissed it on two grounds. The court did not believe the Supreme Court would apply it retroactively (an erroneous prophecy, Ivan V. v. City of New York, 1972, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659), or that it would be "so extended as to reach the *procedural* requirements of

*Conley* and *Knight* [1] *as now interpreted.*" (Emphasis suppl.). 278 A.2d at 146. After this ruling, which manifestly exhausted his state remedies, Wilbur sought a writ of habeas corpus in the district court. Here he met with success. Wilbur v. Robbins, D. Maine, 1972, 349 F.Supp. 149. The state appeals.

The rationale of the Maine court, expressed at some length in *Wilbur*, but with perhaps more specificity in State v. Rollins, Me., 1972, 295 A.2d 914,[2] is that in Maine there is only one crime—"felonious homicide"—which is the intentional and unlawful killing of a human being. When these elements are proved beyond a reasonable doubt, the court states, criminality is established and malice aforethought "functions as a legal formula by which Main law differentiates ultimate punishment classifications (designated under the labels, 'murder' and 'manslaughter')." 295 A.2d 917. Before us Wilbur characterizes this analysis as an attempt to make "an end run" around *Winship*. There is nothing wrong with an end run. The question must be whether in doing so the court went offside.

■ Certainly within broad limits a state court must be the one to interpret its own laws. McMichaels v. Hancock, 1 Cir., 1970, 428 F.2d 1222. We must hold, however, that a totally unsupportable construction which leads to an invasion of constitutional due process is a federal matter.

■ Although in *Rollins* the court stated that "a single underlying criminal entity, 'felonious homicide' [*i. e.*, intentional and unlawful killing], has been continuously reflected in the law of Maine," 295 A.2d at 918, it conceded that "differences in the wording . . . from time to time" had to be taken into account. With deference, we are compelled to conclude that in its re-view of "wording" the court was unduly selective. To begin with, there is no recognition in *Rollins* of the fact that the legislature has seen fit, and, apparently has always seen fit, to treat murder and manslaughter separately, in separate sections, and in no apparent way as a single crime with varying sentences. In the 1964 Maine Revised Statutes, Title 17, Chapter 85 is entitled "Manslaughter." The initial section, section 2551, Definition, provides as follows,

"Whoever unlawfully kills a human being in the heat of passion, on sudden provocation, without express or implied malice aforethought, . . . or commits manslaughter as defined by the common law, shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 20 years . . . . . "

Chapter 89, Title 17, is entitled Murder. Section 2651, Definition, reads,

"Whoever unlawfully kills a human being with malice aforethought, either express or implied, is guilty of murder and shall be punished by imprisonment for life."

Instead of discussing the statutes, the court in *Rollins* referred to prior decisions which it said supported its view of a single offense. It indicated, for example, State v. Park, 1963, 159 Me. 328, 193 A.2d 1, as a case involving "reducing the penalty severity of an intentional killing from 'murder' to 'manslaughter.'" Examination of *Park* is not supportive. The court there used no such language. On the contrary, speaking through Chief Justice Williamson, it referred to "reducing the crime of murder to that of manslaughter." Interestingly enough, that is the precise language used in *Wilbur*, in a portion of the opinion, 278 A.2d at 141, where the court's attention was not directed to the necessity of wording that would take the Maine rule out of the reach of *Winship*

---

1. State v. Conley, 1854, 39 Me. 78; State v. Knight, 1857, 43 Me. 11.

2. *Rollins* was decided a month after the district court's opinion ordering Wilbur's retrial. There is no direct reference, however, to that opinion, or, indeed, to *Winship*.

implications. We do not think of "reducing the crime" as a paraphrase of "reducing the penalty." Nor did the court in *Park* think in terms of a single offense. After citing the murder and manslaughter statutes, Chief Justice Williamson continued, *"The differences between the two offenses have been set forth by our court in the often cited cases below."* (Emphasis suppl.) The court then cited and discussed *Conley* and *Knight*, n. 1, ante.

We need not ourselves discuss *Conley* and *Knight*. It seems sufficient for present purposes to say that in 1963 the Maine court regarded them as supporting the conclusion that murder and manslaughter were two offenses, and that it was only in 1971, after In re Winship, that the court "now interpreted" them (*see* ante) otherwise.

The suddenness of this new interpretation is indicated by our own review of the "wording" of prior Maine decisions. In addition to *Park*, which we must suggest contradicted rather than supported the court, we note three cases which the court did not cite at all. In State v. Merry, 1939, 136 Me. 243, 8 A.2d 143, the court, rather than speaking of degrees of punishment for a single crime embracing both 'murder' and 'manslaughter' as "label[s] for purposes of penalty identification," stated that, "[i]n this State degrees of murder have been abolished. *The crime* is now defined by statute as the unlawful killing of a human being, with malice aforethought, either express or implied." [3] (Emphasis suppl.) In State v. Ernst, 1955, 150 Me. 449, 114 A.2d 369, the defendant was convicted of manslaughter after having been charged with murder. In disposing of defendant's objections,

not here relevant, the court described manslaughter as a "lesser offense than that concerned in the charge of felony murder." 150 Me. at 464, 114 A.2d at 376. Finally, the distinction based upon separate offenses figured importantly in Collins v. Robbins, 1951, 147 Me. 163, 84 A.2d 536, where the court spoke of manslaughter as a "lesser included offense." This could not mean they were the same offense. The fact that they were separate offenses, the defendant being a minor, raised the jurisdictional questions the court was concerned with.

In all fairness to the court, it is possible to pick and choose language from some of the cases which it did cite to make an argument in favor of its present position. We regard it, however, as a very weak argument. The court's selected citations do not stand alone. Particularly, they do not stand apart from the statutes. We cannot believe that the legislature, if asked to revise the present laws, and being told that it would be but a "procedural" step (see *Wilbur*, quoted ante), would enact a single statute stating that "all unlawful killings" constitute the crime of murder, and that simply the sentence would vary, depending on whether the defendant satisfied the jury that he had not meant the result. We believe that in the mind of the public murder is thought of as a premeditated killing, *see* post, and that the court's speaking of manslaughter as simply a different "penalty label" would find no more public acceptance than it would, for instance, if it were to say that because in both cases the act of sexual intercourse was unlawful, adultery and fornication were just labels for distinguishing the length of incarceration. By distinguishing one crime from another, the legislature has made the

---

3. In the present case the judge instructed that express malice aforethought would be evidenced by, for example, the defendant's lying in wait for his victim. While the jury could conceivably have convicted on the basis of express malice, it is obvious that it did not do so here, since there was no such evidence and the jury returned twice for instructions regarding implied malice and extenuating circumstances. Even if we could not determine what theory the jury convicted on, we would reverse the conviction, because the mere possibility of conviction based on an unconstitutional presumption requires reversal. *See* Leary v. United States, 1969, 395 U.S. 6, 31–32, 89 S.Ct. 1532, 23 L.Ed.2d 57.

crucial choices and the courts cannot sweep away at their pleasure the incidents that attach to those choices. One such incident is the requirement that the government prove beyond a reasonable doubt that a defendant has violated each element of the legislatively proscribed pattern of behavior.

Although we must find the Maine court's analysis unacceptable, petitioner can have no valid complaint if there is some other approach by which the burden that the court placed upon him could be justified.[4] The presumption states that once the jury finds an intentional and unlawful killing, malice aforethought is presumed. At argument before us the state contended that the words "malice aforethought" were really only surplusage, included within the terms intentional and unlawful, and that therefore once the latter elements were proved beyond a reasonable doubt, malice aforethought was also proved to that standard. While the term malice aforethought is an amorphous one, and while it may not have any independent meaning in some other jurisdictions, the law of Maine conclusively gives it distinct significance. In State v. Merry, ante at 247–248 of 136 Me., 8 A.2d 143, 146, the court stated that malice "includes that general malignancy and disregard of human life which proceed from a heart void of social duty, and fatally bent on mischief." It then went on to state that malice aforethought implied premeditation. *See also* State v. Turmel, 1952, 148 Me. 1, 88 A.2d 367. Even in petitioner's trial, after instructing the jury that "malice aforethought is an essential and indispensable element of the crime

of murder [a]nd without malice there can be no murder" the trial judge gave the *Merry* definition of malice and concluded,

"That's very ancient language, but it still is quite expressive . . . A wrongful act, in modern language, a wrongful act known to be such and intentionally done without just cause or excuse . . . What do we mean when we use the term malice aforethought? It means that there must be at least a momentary consideration before the killing. And a premeditated design to kill."

Malice aforethought has always been, and was by the charge in this case, treated as something substantively different from an intentional and unlawful killing. *Cf.* State v. Davis, 1940, 6 Wash.2d 696, 108 P.2d 641, 648.

Unlike the law of other jurisdictions, the Maine presumption does not "permit" the inference of malice aforethought, nor does it create a presumption that is eliminated once the defendant raises the issue.[5] The presumption is employed not simply to assist the state in its factual proof, but to shift the burden of proof onto the defendant.[6] In the light of *Winship*, the burden cannot be placed upon the defendant at least by an ordinary presumption. This is but a corollary of the familiar principle that the burden of proving every element of the crime beyond a reasonable doubt remains on the prosecution throughout the case even though the evidence is all one way and uncontradicted. DeCecco v. United States, 1 Cir., 1964, 338 F.2d 797. The presumption may substitute for evidence,[7] but if evidence

---

4. We pass, for present purposes, the hurdle possibly presented by the fact that the case went to the jury under instructions to the clear effect that murder and manslaughter were separate crimes, and that malice aforethought is an "indispensable element of the crime of murder."

5. The Maine law recognizes that if the defendant raises the issue of self-defense, the burden is on the state to disprove it, since a killing in self-defense is not unlawful. State v. Millett, Me., 1971, 273 A.2d 504.

6. In contrast we note that presiding justices, as they are called in Maine, do not always charge in this manner. *See, e. g.,* State v. McCarthy, Me., 1969, 256 A.2d 660, 663.

7. Assuming, of course, "it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary v. United States, 1969, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57.

itself, even though uncontradicted, cannot shift the burden of proving an element of the crime, there would appear no basis for the presumption's rising any higher.

 While a more powerful presumption might, conceivably, be justified if based upon a fact which, if found beyond a reasonable doubt, also compels the inference beyond a reasonable doubt, *cf.* Turner v. United States, 1970, 396 U.S. 398, 416, 90 S.Ct. 642, 24 L.Ed.2d 610, no one could suggest such in this case. The Maine court simply stated:

> "That 'malice is presumed' from an intentional killing is thus, basically, only a summarizing characterization of the proposition that the law demands that the intentional killing of one human being by another must bear the heaviest penalty unless extenuated by other circumstances deemed by wise public policy relevant to the severity of punishment." 295 A.2d at 920.

The court's view of public policy cannot substitute for proof. So long as the Maine statute defines murder as an intentional killing with malice aforethought, if the defendant does not agree to, *see* DeCecco v. United States, ante, a finding of premedition, which petitioner here plainly did not, the burden must be upon the state to establish it. No error is more prejudicial than one which shifts, unfavorably, the burden of proof. *See* Bollenback v. United States, 1946, 326 U.S. 607, 614, 66 S.Ct. 402, 90 L.Ed. 350; Carothers v. United States, 5 Cir., 1947, 161 F.2d 718, 722. *Cf.* United States v. Hayward, 1969, 136 U.S.App. D.C. 300, 420 F.2d 142, 144–146.

One final observation. In writing this opinion we have addressed ourselves to the issue directly presented by the Maine court and argued by the parties. By so doing we do not wish to be taken as accepting the court's conclusion, had we agreed with its premise. If the legislature were to enact a statute providing that there is only one crime—felonious homicide—and that the penalty shall be life imprisonment unless the defendant establishes that the killing was not premeditated, we would question whether a formula which imposed on the defendant a factual issue determinative of the length of sentence would be any more acceptable than when used to establish an element of the crime. As the Court made clear in United States v. Tucker, 1972, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 constitutional principles are applicable to both aspects. A presumption too weakly based to support a finding of guilt would seem equally unavailable to determine sentence. We need not presently pursue this matter, but we must have grave doubts whether the device of assuming the worst and requiring the defendant to extricate himself would better the situation.

The order of the district court is affirmed.