STATE of Maine

v.

Paul BOYD.

Supreme Judicial Court of Maine.

Sept. 7, 1972.

Joseph E. Brennan, County Atty., Portland, for plaintiff.

Caroline Glassman, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

On September 11, 1970 the Defendant, a young black man, was found guilty by a jury of the crime of rape from which this appeal is taken.

The testimony reveals that the jury could properly have found that about 9:30 P.M. on the night of June 22, 1970 the victim of the assault, a 17 year old girl, was walking up Congress Street in Portland approaching Longfellow Square from the west. A short way above the Sportsman's Grill, and on the opposite side of the street, the girl overtook a man who was also walking on the sidewalk.

As the girl started to pass this man he asked her directions to the Westfield Hotel. She pointed out the direction of the hotel but because of a bend in the street it could not be seen from where they were conversing and she started to walk back down Congress Street towards where the hotel could be seen.

Suddenly, the man pulled her into the bushes, dragged her into a vacant lot on the hillside, threatened her with death and

brutally beat her. During the next hour and a half or two hours her assailant moved the girl to several areas around the hillside between the Maine Medical Center and Congress Street, and forced her to have sexual intercourse with him on several occasions until he finally left the area.

The girl thereupon made her way up the field to the Maine Medical Center where she was given medical assistance at the emergency clinic. She testified that her parents met her at the hospital and accompanied her to the police station where she gave a description of her assailant. There is nothing in the testimony as to how she described the assailant to the police except that he wore a blue blazer and light trousers. At trial she said only that he was "a man" wearing "a blue shirt, blue colored windbreaker, light pants and white sneakers".

During the evening of June 23, 1971 the police went to the room of the Defendant at the Westfield Hotel. They requested the Defendant, along with two other black men, to come to the police station for the purpose of an identification. At the request of the police, the victim and her father came to the police station that evening. She was told by an officer that she was to observe three men, one of whom was possibly her assailant, and to take her time and look them over and identify him if she could.

The three black men were in one room with a police officer. The victim, her father and another policeman were in the next room and the victim observed them through a one-way mirror which permitted her to see them but not to be seen by them, although they knew they were being viewed. The men were of only slightly different heights and there were no significant variations in their clothing except that the Defendant, alone, wore white sneakers. The record discloses no verbal suggestions to the girl by the police or her father. The girl identified the Defendant as soon as he turned facing her.

The police then brought the Defendant into the room where the girl waited and she again identified him. The Defendant said, "You don't know me." At this time the Defendant was placed under arrest and advised of his constitutional rights.

At trial the victim of the rape made an in-court identification of the Defendant as her assailant. After the State had finished its direct examination of the girl, the Presiding Justice inquired of the prosecuting attorney if he didn't think "it would be helpful to develop when she next saw this Defendant after the occasion in the field". The State thereupon introduced testimony from the girl and from Officer Giobbi of the Portland Police Department as to the out-of-court identification of June 23, 1971.

■ The Defendant first argues that the evidence was not sufficient to establish Defendant's guilt beyond a reasonable doubt. We find no merit to this contention. There was evidence presented to the jury which, after evaluation by them, fully justified their finding that the girl had been raped and that the Defendant was her assailant. It is not the sufficiency of the evidence as to the identification which disturbs us but the possibly unfair circumstances of its presentation.

■ The Defendant contends that the in-court identification should have been excluded from the evidence as it was tainted by what Defendant contends was a prejudicial out-of-court identification.

No objection was made by Defendant's counsel to the in-court identification of the Defendant by the victim, nor to the later testimony as to her earlier out-of-court identification.

We said recently:

"It has been a long standing procedure in Maine that if a party has an objection to the introduction of evidence at trial he must state the same to the court specifying at the time his grounds for the objection. Rule 51, M.R.Crim.P., gives

it the force of law. Where no objections to the admission of the identification evidence were registered at the trial, the defendant must be deemed to have waived the same. Brine v. State, 1970, Me., 264 A.2d 530, 535. Constitutional rights, like other rights, must be protected at trial within the format of trial procedures and court rules and are subject to recognized principles of waiver. *Brine,* supra. It is only when the evidence complained of admitted without objection is so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved party of a fair trial that an appellate court may consider the propriety of its admissibility when raised for the first time on appeal." State v. Levesque, Me., 281 A.2d 570, 576–577 (1971).

We realize that counsel's failure to object to the in-court identification may have resulted from his being unaware of the out-of-court identification and that both counsel were doubtless unprepared for the Court's interjection of the out-of-court identification into the victim's testimony.

Because identification procedures are relatively new to our bench and bar and because of the unusual manner in which the present evidentiary problem came about and the inherent possibility of highly prejudicial results, we feel we should examine this claim of error.

The Defendant argues that the extrajudicial identification by the victim on June 23, 1970 was inadmissible since he was entitled to have a lawyer present at the lineup and none was provided. In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) the United States Supreme Court considered the question of the application of the Sixth Amendment right to counsel to out-of-court identifications in view of the potential for improper influence present in a police-arranged out-of-

court identification procedure. In *Wade* it was held that courtroom identification of an accused who was exhibited to witnesses before trial in a post-indictment lineup without notice to and in the absence of Defendant's counsel must be excluded unless it is determined that the trial identification is based on observations independent of the lineup identification. In *Gilbert* the Court applied a *per se* exclusionary rule to evidence of post-indictment lineup identifications conducted in absence of counsel. It was decided in *Stovall* that although *Wade* did not have retroactive application, an out-of-court identification procedure which in the light of the totality of circumstances "was so unnecessarily suggestive and conducive to irreparable mistaken identification" as to amount to a denial of due process of law would be excluded.

After studying the significance of these decisions we concluded in State v. LeBlanc, Me., 290 A.2d 193 (1972) that the presentation of a subject singly to witnesses for identification—especially if at a police station and if Defendant is unaware that he is being observed—is *prima facie* a violation of due process and demands affirmative explanation by the State to justify or excuse the use of the procedure or to mitigate the effects of its suggestiveness.

Since argument of this case, the United States Supreme Court has refused to extend further the *Wade-Gilbert* provisions for presence of counsel at identification, holding that the Sixth Amendment right to counsel did not apply to a police-arranged investigatory confrontation between the victim and suspect held *before* any formal charges had been brought. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed. 2d 411 (1972).

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the Government has committed itself to prosecute, and only then that the adverse posi-

tions of Government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. . . .

. . . Less than a year after *Wade* and *Gilbert* were decided, the Court explained the rule of those decisions as follows: 'The rationale of those cases was that an accused is entitled to counsel at any "critical stage of the *prosecution*," and that a post-indictment line-up is such a "critical stage".' . . . We decline to depart from that rationale today by imposing a per se exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever." Kirby v. Illinois, supra.

The *Kirby* decision has thus proved determinative of this issue as applied to the United States Constitution. Although under Article I, § 6 of the Constitution of Maine the Defendant has a right to counsel independent of guarantees of the Sixth Amendment to the United States Constitution, we decline to extend that right beyond the well-reasoned limitations prescribed in *Kirby*.

█ Although we hold that the failure to provide Defendant with counsel at the out-of-court identification was not a violation of constitutional right to counsel, we remain aware that any prosecutorial identification must also satisfy the substantive protections of Due Process.

"What has been said is not to suggest that there may not be occasions during the course of a criminal investigation when the police do abuse identification procedures. Such abuses are not beyond the reach of the Constitution. As the Court pointed out in *Wade* itself, it is always necessary to 'scrutinize *any* pretrial confrontation. . . .' . . . The Due Process Clause of the Fifth and Fourteenth Amendments forbids a line-up that is unnecessarily suggestive and conducive to irreparable mistaken identification." Kirby v. Illinois, supra.

█ Without adherence by the police to the Due Process protections afforded an accused, the extra-judicial identification would not be admissible—unless affirmatively explained, justified or mitigated as we said in *LeBlanc*—and the in-court identification, if it had no origin independent of the out-of-court identification, could not properly be admitted into evidence.

Because testimony as to identification was received without objection from Defendant and because no hearing was held by the Court or findings made as to the fairness of the out-of-court identification or the independence of the in-court identification, our examination of the "totality of the circumstances" must be made from an unsatisfactory record.

Testing the circumstances of the case at hand against the demand for due process we must first examine the use by the police of the one-way mirror.

While the record does not reveal any evidence of intentional unfairness by the police in their use of the one-way mirror on this occasion, the potential for unfairness of the device is great and the threat to due process is enormous. The Defendant is excluded from the presence of the victim and the police and is unaware of the circumstances under which the identification procedures are being conducted on the other side of the mirror. He must depend upon the police and those persons the police have permitted to be present for information upon which the fairness of the viewing may be judged. His counsel at trial is gravely handicapped in protecting the Defendant from effects of possible improper suggestion contributing to the identification.

We note that among the opinions of several courts which have recently found that use of the one-way mirror endangers the integrity of the identification is the blunt admonition of the Judges of the First Circuit Court of Appeals:

". . . A one-way glass viewing in a police station of which the suspect is ignorant is such a flagrant constitutional violation that no prosecutor should be surprised if, faced with such a viewing occurring after the date of this opinion, we conclude that the fact that it was thought necessary was a conclusive admission that the witness required unconstitutional assistance." Allen v. Moore, 453 F.2d 970 (1st Cir. 1972).

■ We recognized in *Levesque* that while the use of prearrest photographic identification of not-yet-apprehended suspects carries some inherent potential danger and its fairness and reliability depend upon the circumstances under which the identification takes place, it is a necessary tool of crime detection. A similar potential for unfairness and unreliability exists in the use of the one-way mirror. However, the same urgency for an identification out of the suspect's presence does not exist when the suspect is already at the police station available for a face-to-face identification. Because of this, we consider that only exceptional circumstances of exigency or practical necessity would justify the use of the one-way mirror in the future.

Outside of the inherent potential unfairness of the use of the one-way mirror the record discloses only one aspect of the out-of-court identification which presents obvious questions of unfair suggestion—the Defendant was the only member of the trio wearing white sneakers, one of the four articles of clothing which the record shows the victim knew the assailant was wearing during the attack.

■ While the Court in *Gilbert* was concerned with Sixth Amendment right to counsel when it recognized the danger that

"the witness' testimony of his [unconstitutional] lineup identification will enhance the impact of his in-court identification on the jury",

similar considerations must affect our decision. While a dangerously suggestive out-of-court lineup may affect the *reliability* of the in-court identification there is also the likelihood that the jurors' awareness that the victim has previously identified the assailant will add weight to their evaluation of the in-court identification. The State's presentation to the jury of evidence of an unfairly suggestive out-of-court identification would entitle a Defendant to a new trial unless it is found beyond a reasonable doubt to be harmless error.

■ We are forced to conclude that the record does not permit an informed judgment as to whether the exhibition of the Defendant—wearing white sneakers—through the one-way mirror was unfairly suggestive,[1] whether it tainted the victim's

---

1. While the police cannot be expected to dress all members of a lineup identically, a deliberate arrangement whereby only a Defendant was required to wear a distinctive and significant article of clothing when viewed by the victim might well destroy the validity of the procedure.

Here we are unable to determine from the sparse record whether the officer knew before the lineup that the assailant had worn white sneakers or whether he learned this from the victim immediately after the lineup—an issue better determined by a Court which has the witnesses before it. At trial the State offered the white sneakers into evidence. "Q (By the County Attorney) : Where did you get these sneakers?
A After I charged Mr. Boyd with rape.
Q. Was this after Mr. Boyd had been identified—
A Identified.
Q (Continued) :—by Miss L.?
A By Miss L.; I brought Miss L. in and had a conversation."
Officer Giobbi testified that at the time he picked up the Defendant at the

in-court identification or whether presentation of evidence concerning it was harmless error.

Painfully absent is evidence of the victim's ability to recognize the Defendant from her observation of him at the time of the crime. The victim was in the presence of the rapist for some one and one half to two hours between 9:30 P.M. and Midnight. After she first encountered him she walked beside him on the sidewalk about 100 to 200 feet. There were street lights only on the other side of the street. Later, in the vacant lot where there were bushes, the girl testified that the only light was "from the street, the cars passing by . . . It wasn't pitch black". There were no lights from the houses in the area. The girl described long soliloquies by the man who wondered aloud during the attacks how he was going to escape from the situation in which his criminal action had involved him.

One would theorize that she had had considerable opportunity to observe whether the man was tall or short, thin or stout, black or white, and to note the quality of his voice or his manner of speech or movement. Instead, the only description which she gave in court was that her assailant was a man wearing a blue shirt, blue-colored windbreaker, light pants and white sneakers.[2]

The record contains no description of the assailant given by the victim before the Defendant's arrest which can be compared with the Defendant's appearance. The girl testified that she gave the police a description of her attacker immediately after she left the hospital but the only details of this description appearing on the record are that he wore a blue blazer and light trousers.[3]

The lapse of time between the attack and the out-of-court identification was only 20 hours. This suggests that the victim's memory of her observations should have been fresh, but we are not told what the observations were.

While our concern is not with a violation of the right to counsel such as impelled the United States Supreme Court in *Gilbert* to impose a *per se* exclusionary rule, we are convinced that the peculiar circumstances of the introduction of the out-of-court identification and our complete inability to test it for fairness from the record require a new trial.

 We recommend to Courts and counsel participating in criminal trials where there has been a police-arranged pre-trial observation of the Defendant by witnesses, either in person or by examination of photographs, that the procedure detailed by the Judges of the Circuit Court of Appeals for the District of Columbia Circuit in Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) be followed:

"In the conduct of trials involving post-*Wade* and *Gilbert* identifications, the mode of proceeding would seem to be as follows: Whenever the prosecution proposes to make eyewitness identification a part of his case, the defense is entitled to know, through disclosure by the prosecution or by evidentiary hearing

Westfield Hotel "he [the Defendant] was laying on the bed without his shoes on; and he got up and put on a pair of white sneakers . . ."

The Defendant testified that the police "asked me to put them on to wear them down, so I put them on and wore them down."

2. We are aware that her failure in Court to give a description of the man's physical qualities may well have been due to

the fact that she was asked to describe only his clothing.

3. Any uncertainty the State may have had as to its right to support a victim's in-court identification by evidence of her earlier description to the police of a then-unapprehended assailant should be dispelled by the opinion of this Court in State v. Galloway, Me., 247 A.2d 104 (1968).

outside the presence of the jury, the circumstances of any pre-trial identification. If it was one where the court finds that the Sixth Amendment right to counsel existed but was not observed [or that due process was not observed], the prosecution may not, under the *per se* exclusionary rule enunciated by the Supreme Court in *Gilbert*, offer such identification as part of its case; . . .

Where the prosecution intends to offer only an in-court identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether a pre-trial identification by the same eyewitness is violative of due process or the right to counsel. If a violation is found, the court should then decide whether the in-court identification is still admissible because it has an independent source; indeed, it would appear in the interest of expeditious judicial administration for such a ruling to be made in any event. If the judge regards only the in-court identification as admissible, in the trial to the jury thereafter, the defense may, as a matter of trial tactics, decide to bring out the pre-trial confrontation itself, hoping that it can thus detract from the weight the jury might otherwise accord the in-court identification."

Appeal sustained.

Remanded for new trial.

All Justices concurring.