**STATE of Maine**

**v.**

**Thomas CAPLAN.**

Supreme Judicial Court of Maine.

March 5, 1976.

Henry N. Berry, III, Dist. Atty., Peter Ballou, Asst. Dist. Atty., Portland, Jon Holder, Law Student, for plaintiff.

Ray R. Pallas, Westbrook, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

Nearly ten years after the *Wade* [1] *Gilbert* [2] *Stovall* [3] trilogy, we are still having *"out-of-court" "in-court"* identification problems raised before us.

This case comes to us on appeal from judgment of conviction entered upon a jury verdict of guilty on an indictment charging the appellant with the crime of assault and battery of a high and aggravated nature (17 M.R.S.A. 201).

We deny the appeal.

The story commences, as the complainant relates it, on May 12, 1974, at about 7:30 o'clock in the evening. She was walking on Congress Street in Portland, intending to turn onto Exchange Street and then walk to her place of employment.

As she approached the area of Lincoln Park on Congress Street, she became aware of the sound of footsteps behind her. After she had turned off Congress Street and was walking through Lincoln Park toward Exchange Street, she continued to hear the footsteps behind her. Ultimately, while still in Lincoln Park, she turned and there saw a man then about six or eight feet from her. At that point

"[h]e jumped on my back and knocked me on the ground and when he jumped me he grabbed the front of my pants, he was trying to unzip the front of my pants, and he was trying to put his hand into my vagina."

After a struggle the man ran from the complainant and was lost from her view when he was in the area of the county jail on Federal Street.

Thereafter, she hurried to her place of employment and notified the police department of the occurrences in Lincoln Park a few moments before.

When she notified the police she gave the following description of her assailant:

"[H]e was about 6 foot, 160 or 170, he had brown should-length [sic] hair parted in the middle, and he looked Indian, his nose was flatened [sic] out, he had on red and black plaid hunting jacket, purplish pants and sneakers."

In response to a question relating to the complexion of the assailant, she replied, "He had very bad acne"; and as to the assailant's age, she said, "[H]e was in his twenty's."

Within a few minutes of the happening of the incident, two police officers interviewed the complainant at her place of employment. At that time they exhibited five "mug-shot-type" photographs in color.[4]

1. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
2. *Gilbert v. State of California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).
3. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
4. The photographs were admitted in evidence and we have examined them carefully. All five display similar features, such as hair length, shape of nose, height of cheekbones, and similar type of dress. Each photograph's identification as a police *"mug shot"* was obliterated by tape at the time the photographs were exhibited to the complainant.

174

The complainant very quickly picked out the photograph of the appellant and said of it:

"A  I pointed out this one [the appellant]. . . . And I told them I thought that was the man but I wasn't sure.

"Q  And were you sure at that time, looking at the picture?

"A  No, I stated I would prefer to see him in person that I didn't want to go by a picture."

About 30 minutes after the police officers left, taking the photographs with them, the complainant called the police department and "told them that I was sure that was the person but I would still like to see them [sic him]."

Some two weeks later, complainant was called by a police officer and told that the man pictured in the photograph she had identified would probably be in the corridor in the District Court quarters at the courthouse that morning. She was then invited to come to the police station and go to the courthouse with some officers.

She said she entered the courthouse with the two officers behind her; that as she looked down the corridor she observed 30 or 40 persons, several of whom had long hair and some of whom had the same general personal appearance as the appellant at the time of the assault in Lincoln Park. She says as she looked down the corridor, she immediately spotted the appellant and identified him to the officers as the assailant. At the time she identified him, he was sitting on a bench near the end of the corridor farthest from her. She says she recognized him immediately when he looked up at her and she saw his face.

At the trial she was asked to identify her assailant in court. At that point, objection to the in-court identification was made by appellant's counsel. The court very properly, and acting in accordance with the procedure recommended by this Court in *State v. Boyd*, Me., 294 A.2d 459

(1972), excused the jury and took testimony concerning the out-of-court photographic identification and the circumstances surrounding the identification of appellant by the complainant in the corridor of the District Court.

After receiving the evidence and after counsel had argued, the presiding Justice said:

"Well the Court finds the out of court identification is not violative of the due process and that coupled with the in court identification, the Court will permit this evidence to go to the Jury. Of course, the defendant's attorney would have a right to cross examine on all stages to lessen the affect [sic] of her identification. So with that understanding you can call in the Jury."

In the presence of the jury the witness was permitted to make an in-court identification of appellant.

The State then proceeded to elicit testimony concerning the photographic identification and the out-of-court identification of the appellant which was made in the corridor of the District Court some two weeks after the attack took place in Lincoln Park.

Appellant now argues that it was error for the court to allow the in-court identification of appellant because, he says, such identification was tainted by an unduly suggestive pretrial photographic display and was further tainted by an impermissibly suggestive out-of-court identification which occurred in the corridor of the District Court.

Appellant also argues that it was error to permit the State, over appellant's objection, to offer evidence of the pretrial photographic identification and the corridor identification before any attempt was made by appellant to impeach the in-court identification.

We have, in a series of cases, held that an in-court identification cannot be permit-

ted if such identification is tainted by an impermissibly suggestive pretrial line-up identification unless the in-court identification has an independent source. *State v. Boyd,* supra.

This Court, in *State v. LeBlanc,* Me., 290 A.2d 193 (1972) and *State v. Northup,* Me., 303 A.2d 1 (1973), declared that a one-way mirror identification is prima facie violative of due process and that because of such prima facie effect,

"[t]he burden in such a case is on the State to affirmatively show additional circumstances either mitigating the suggestiveness initially indicated, or provide a justification or excuse for the practice in accordance with the standard that particularly compelling or exigent circumstances make the practice reasonably necessary." *State v. Rowe,* Me., 314 A.2d 407, at 413 (1974).

Where an out-of-court identification is found by the court to have been unduly suggestive, such out-of-court identification becomes inadmissible by the State even though it was introduced under cross examination by the defendant. *State v. Rowe,* supra. See also, *State v. York,* Me., 324 A.2d 758 (1974); *State v. Niemszyk,* Me., 303 A.2d 105 (1973), cert. den. 414 U.S. 1042, 94 S.Ct. 544, 38 L.Ed.2d 333 (1973); *State v. Emery,* Me., 304 A.2d 908 (1973); *State v. Carlson,* Me., 308 A.2d 294 (1973).

We have also ruled that an in-court identification may be made even though it was preceded by an impermissibly suggestive out-of-court line-up identification if the court finds after hearing that the in-court identification has a source independent of the impermissible out-of-court identification. *State v. Boyd,* supra.[5]

In the instant case the court found that neither the identification resulting from the photographic display nor the identification of the appellant in the District Court corridor was violative of due process.[6]

With this conclusion we agree.

■■■ We now turn to consideration of the claim that it was error to permit the State to offer evidence of the pretrial identifications before any attempt was made by appellant to impeach the in-court identification.

The position taken by appellant in his brief and at oral argument is that the State is to be permitted to introduce a legally appropriate out-of-court identification after an in-court identification only when there has been an effort by the defendant to impeach the credibility of the State's witness. *State v. Galloway,* Me., 247 A.2d 104 (1968) is cited as authority for the appellant's position.

We do not so construe *Galloway.*

In *Galloway,* evidence of the out-of-court identification was offered only after the complainant had been subjected to a rigorous cross examination which had as its primary objective the impeachment of the witness with respect to identification. In that case the State called a police officer to testify about a prior out-of-court identi-

---

5. We note the Justice in the trial court did not make any finding as to whether the in-court identification had an "independent source" even though testimony was taken out bearing on that point. We take this occasion to again remind Justices of the Superior Court that "[i]f a violation is found, the court should then decide whether the in-court identification is still admissible because it has an independent source; indeed, *it would appear in the interest of expeditious judicial administration for such a ruling to be made in any event."* (Emphasis added) *State v. Boyd,* Me., 294 A.2d at 466.

6. We need not concern ourselves that the appellant was without counsel at the time of the corridor identification because no adversary judicial criminal proceeding had been instituted. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). See also, *State v. Boyd,* supra, and *State v. Niemszyk,* supra, for discussion of counsel requirements under Maine Constitution. We held in *State v. Niemszyk,* supra, that the Wade-Gilbert counsel requirement is not applicable to an out-of-court photographic identification. See also, *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973).

fication made by the complaining witness. The objection made by the then defendant was that such evidence was hearsay. The *Galloway* court ruled that it was proper to show, through the witness, that the complainant had remained constant in her description of the assailant and that her testimony given on the stand was not a recent contrivance. The proffered evidence was not inadmissible as hearsay evidence. Rather, it became admissible not for the truth of the matter asserted but as a verbal act tending to corroborate the testimony of the complainant. *State v. King,* 123 Me. 256, 122 A. 578 (1923) was cited as authority for such rule.

As authority for the claim that evidence of prior out-of-court identification is admissible as part of the State's case only where there has been an effort by the defendant to impeach the credibility of such State's witness, no case has been called to our attention from any other jurisdiction which supports the position appellant has taken in his brief.

We are aware that *Murphy* [alias Jones] *v. State,* 41 Tex.Cr.R. 120, 51 S.W. 940 (1899) does hold exactly what the appellant contends we should hold. However, in the later case of *Cline v. State,* 150 Tex. Cr.R. 586, 204 S.W.2d 512 (1947), the Texas court said of *Murphy,* alias Jones:

> "The *Murphy,* alias Jones case seems to be the only one which supports appellant's contention, but that case has been overruled by implication in the cases herein cited by us."

We know of no reason why the State should not be permitted, as part of its case in chief, to introduce evidence of out-of-court identifications which were made consistently with due process requirements after the in-court identification and before there has been an attempt by the defendant to impeach the in-court identification.[7]

7. Of course, if the pretrial line-up is impermissibly suggestive (*State v. Boyd,* supra) or if no counsel was present representing the appellant at a time when he was entitled

Appellant also complains that the court took judicial notice of the time of sunset on May 12, 1974. We find this was not error. *LeGates v. Ennis,* 37 Del. 31, 180 A. 325 (1935); *Haley v. Edwards,* Mo., 276 S.W.2d 153 (1955).

■ Appellant also contends the evidence was insufficient to show the assault and battery was of a high and aggravated nature. The evidence disclosed a sexual assault in that the attacker not only knocked his victim to the ground but he "grabbed the front of my pants, he was trying to unzip the front of my pants, and he was trying to put his hand into my vagina."

There can be no gainsaying the difference in the sex of the complainant and the assailant, the indecent liberties and familiarities with a female, and the purposeful infliction of shame upon her are all circumstances of aggravation as described in *State v. Bey,* 161 Me. 23, 206 A.2d 413 (1965).

We find no error requiring a reversal.

It follows, therefore, the entry must be:

Appeal denied.

to counsel (*United States v. Wade,* supra; *Gilbert v. State of California,* supra), the State cannot be permitted to use such out-of-court identification under any circumstances.