STATE of Maine

v.

Gerald R. CHAPMAN.

Supreme Judicial Court of Maine.

May 26, 1976.

Thomas E. Delahanty, II, Dist. Atty., Auburn, for plaintiff.

Charles A. Peirce, Palermo, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The defendant has appealed following his conviction for the crime of robbery (17 M.R.S.A. § 3401). We deny the appeal.

Pursuant to Rule 33, M.R.Crim.P., the defendant filed a motion for a new trial, which delineated the reasons underlying this appeal, namely:

"1. The Court erred in denying Defendant's motion for a brief continuance;

2. The Court erred in denying substantial parts of Defendant's motion for discovery;

3. The Court erred in charging the jury and in refusing to charge the jury as requested by Defendant;

4. The verdict is contrary to the weight of the evidence;

5. The verdict is not supported by substantial evidence;

6. The Court erred in continuing the trial thru verdict stage after the Defendant's absence commenced, thereby substantially prejudicing Defendant's rights.

7. Application of Rule 43, Maine Rules of Criminal Procedure, deprived the Defendant of his basic rights under the Constitution of the United States, and the Constitution of the State of Maine, Article I, Sec. 6, Sec. 6–A; said Rule 43 being in violation of both Constitutions . . . ."

Counsel for the indigent appellant has argued only these issues:

"I. Was the Appellant's Trial Unduly Prejudiced By the Denial of His Motion for Continuance and Motion for Discovery?

II. Did the Presiding Justice's Later Instruction Which Attempted to Clarify an Earlier Instruction Regarding the Defendant's Right Not to Take the Stand and to Disassociate That With the Right Against Self-Incrimination, So Prejudice the Jury's Minds as to Make the Trial Unfair?

III. Were the Photographic Lineups in the Police Station Unfair and Did Such Unfairness Taint the Positive In-Court Identifications at Trial?"

■ Although the points specified in Paragraphs 6 and 7 of the motion for a new trial have been neither briefed nor argued, and thus may be considered waived, we feel it appropriate to comment briefly thereon. To either brief or argue these issues would have been counterproductive. On both the facts [1] (Paragraph 6) and the constitutional issue (Paragraph 7) our recent decision in *State v. Staples,* 354 A.2d 771 (Me. 1976), is dispositive adversely to the appellant's position.

We also note that neither Paragraphs 4 or 5 in the motion for a new trial have been briefed or argued. In any event, these points are without merit. Our review of the record satisfies us that the jury had abundant factual support for its announced verdict. The only viable issue was whether the State had successfully identified the appellant as the robber since the fact of a

---

[1]. At 11:45 a. m. on the second day of trial, the State having concluded its presentation of evidence, the Court suspended for noon recess until 1:00 p. m. At 1:55 p. m. the Court reconvened and the absence of the defendant was noted. The Court inquired of counsel and determined that the defendant had been instructed to return at 1:00 p. m. and that his counsel had no explanation for his failure to do so. Additionally, a search had been instituted which was unsuccessful. With this background the presiding Justice, acting pursuant to Rule 43, M.R.Crim.P., ordered the trial to continue. Tacit in this ruling is the finding, which is supported by the record, that the defendant had voluntarily absented himself during the progress of the trial. There is nothing in the record before us which, if viewed retrospectively, would justify the defendant's conduct.

robbery by someone had been established beyond any possible doubt. On the issue of identity three witnesses, including the victim, made in-court identifications of the defendant as the robber and the jury apparently did not hesitate[2] in accepting the testimony despite the fact that each of these witnesses was vigorously cross-examined on all the surrounding circumstances. Since the testimony of these witnesses was accepted by the jury, the evidence of guilt was not only sufficient, it was overwhelming.

We now turn to those issues which were briefed and argued.

I

■■■ Was it error to refuse the appellant's motion for a continuance?

Prior to impaneling the jury, the Court-appointed counsel for the appellant moved for a continuance, stating:

"The reason for making the motion is that some of the material requested in the discovery was not made available until today, particular reference being had to the photographs. Also, the non-availability of certain statements logically expected to be a part of the record now found to be non-existent. Further, the fact that the defendant, although instructed to do so by the Court and by the County Attorney, did not actually contact counsel appointed by the Court until two o'clock the day preceding the trial. That's all."

Initially, we should point out that the Justice presiding carefully considered whether the State had complied with a motion for discovery and determined that it had. Our review of the record detects no error in this ruling.

The argument that defense counsel was surprised because the State did not have in its possession a statement of a particular

witness that defense counsel, sua sponte, *assumed* it would have is hardly a ground for continuance. This is particularly true when the prosecuting attorney divulged to the defense what this witness would testify to if called. Rule 16, M.R.Crim.P., requires the production of only such relevant documents and objects as are "within the possession, custody, or control of the state."

Trial counsel had initially been privately retained and was present at the time of appellant's arraignment on September 10, 1973. This counsel demonstrated considerable knowledge of the case because on September 17, 1973, he prepared and filed a motion for discovery which was formally considered on the day trial started, namely, February 12, 1974. On November 16, 1973, the then retained counsel withdrew. Thereafter appellant was granted two continuances for the purpose of employing counsel on his own representation that he wished to do so and was not indigent. It was not until February 4, 1974, that appellant admitted his indigency and his originally retained counsel was appointed. At that time both appointed counsel, by telephonic communication with the presiding Justice, and the appellant, by the Justice in person, were informed that trial was scheduled for February 12, the appellant being then advised by the Justice to seek out appointed counsel immediately. In fact, the record indicates that the appellant neglected to contact his appointed counsel until February 11th. The next day at 10:15 a. m. the motion for continuance was made. After reviewing the foregoing facts, the Justice denied the motion and ordered the trial commenced at 1:30 p. m. of the same day.

These facts are readily distinguishable from those in *Rastrom v. Robbins*, 440 F.2d 1251 (1st Cir. 1971). In *Rastrom* defense counsel had met his client only four hours before the trial was scheduled. The nature of the case required substantial preparation, the Court had some notice that Rastrom's

---

2. After a trial which lasted a day and a half and in which seven witnesses had testi-

fied, the jury required only twenty-one minutes to return a verdict of guilty.

refusal to accept appointed counsel was the product of mental instability, appointed counsel had little prior trial experience and the appellate court did not have a record before it from which it could determine the absence of actual prejudice. As we have reiterated the facts, the converse situation exists on this record. *See Frates v. Bohlinger,* 472 F.2d 149 (1st Cir. 1973). Furthermore, the complete trial transcript has been studied carefully and we are able to determine "that court appointed counsel conducted the defense with skill and competence." *State v. Carll,* 161 Me. 210, 214, 210 A.2d 680, 682 (1965). From the totality of the record we are unable to say that appellant has met his burden of demonstrating any actual prejudice arising from the denial of the motion for continuance. *State v. Rastrom,* 261 A.2d 245 (Me.1970).

## II

 The appellant did not submit any proposed instructions to the presiding Justice prior to the charge to the jury. It was therefore proper for the Justice to give an instruction on the defendant's failure to testify in his own defense. *State v. White,* 285 A.2d 832 (Me.1972); *State v. Girard,* 283 A.2d 462 (Me.1971); 15 M.R.S.A. § 1315. Initially the jury was charged as follows:

"Now, the defendant in this case has chosen not to take the stand and testify. This is his privilege. He has a privilege against self-incrimination. He is not required to prove his innocence. The State is required to prove his guilt.

So, the fact the defendant has not taken the stand here cannot be used by you as evidence against him. This is his privilege and it is his privilege because, as I say, the State has the burden of proving his guilt. He is not required under our law to prove his innocence."

The appellant objected to this portion of the charge, claiming that the linking of the statutory right not "to testify in his behalf" and the constitutional right against self-incrimination could have a prejudicial effect on the minds of the jurors. The presiding Justice then gave the following corrective instruction:

"At one part of my instruction . . . I indicated to you that the defendant had not taken the stand and that was his privilege and . . . you should not consider his failure to take the stand as evidence for or against him.

I also mentioned that he had a right against self-incrimination. This is not correct. And you will disregard completely what I told you relative to that part of my instruction and I will now read you an instruction which you will follow relative . . . to the defendant's failure—I won't say 'failure'—his choice not to testify. His failure to testify is not necessarily an exercise of his right not to incriminate himself. That is a substantially different rule. His failure to testify does not justify you, the Jury, in making any inference to that as to his innocence or guilt.

What I stated as far as a right against self-incrimination, in fact, is not applicable at the trial and that would be an instance where he would be involved as a —compelling a defendant to give evidence against himself. This is not involved here. It's only that if he decides not to take the stand, that's his right and it's not to be taken by the jury as any reference to his innocence or guilt. This is the instruction you must carry."

The appellant did not object to the corrective instruction, nor did he make any further requests. He now contends that the first instruction was so prejudicial that it could not be cured by a corrective instruction and that the corrective instruction was so confusing and ambiguous as to independently constitute obvious error cognizable under Rule 52(b), M.R.Crim.P.

While it is true that the initial instruction commingled the right of a defendant not to testify in his own behalf with the privilege against self-incrimination, we fail to see how it resulted in incurable prejudice. The trial Justice clearly stated the mandate of 15 M.R.S.A. § 1315, namely: "The fact [the accused] does not testify in his own behalf shall not be taken as evidence of his guilt." The addition of statements about the privilege against self-incrimination was entirely gratuitous and had no bearing on the case.

If the initial instruction was erroneous, then the curative instruction drew a clear distinction between the separate rights and explained that the privilege against self-incrimination was irrelevant. The appellant contends that the Justice's use of the phrase "failure to testify" immediately after his admonition to himself not to use the word "failure" was so confusing that the jury could not have properly understood the statutory right. Even if we agree for purposes of argument that the corrective instruction might have been more articulate, it appears to us that the critical rule of law involved was correctly articulated for the jury.

### III

We now turn to the final point advanced in argument which deals with the propriety of the in-court identifications of the appellant and the claim of taint arising from impermissible photographic lineups. The testimony dealing both with in-court identifications and the photographic lineups was admitted *without objection*. It was not suggested as improper in the motion for a new trial and is advanced for the first time on appeal. Therefore, we limit our review of this issue to whether there was *manifest error of such prejudicial effect as to infringe on appellant's substantial rights.* Rule 52(b), M.R.Crim.P. *State v. Deveau,*

354 A.2d 389 (Me.1976); *State v. Sheehan,* 337 A.2d 253 (Me.1975); *see State v. McDonough,* 350 A.2d 556 (Me.1976).

Positive in-court identifications were made by three witnesses, the victim of the robbery, a person observing the robbery from a fourth floor apartment window across the street and a 36 year old pedestrian who was "no more than five or six feet" away when the robbery occurred. The scene was about midnight in a well lighted area on one of the main streets in Lewiston. The victim and observant from the apartment window were taken to the Lewiston Police Department shortly thereafter and each unhesitatingly selected the appellant's photograph from among six "mug shots." The third witness viewed these same photographs the next day and correctly selected the third one as that of appellant. A fourth witness was able to identify appellant's photograph but did not make an in-court identification. A fifth person (not a witness) failed to identify any photograph.[3]

The six photographs, without objection, were introduced at trial and no suggestion is made (or should it be) that these "mug-shots" were not fairly representative of people who might fit the defendant's general description.

The witnesses were vigorously and thoroughly cross-examined on both the independence of their respective in-court identifications and any irregularities in the lineup procedure. Likewise, the officers who arranged for and conducted the lineup were carefully examined. We can find no suggestion of impropriety in the manner in which the lineups were conducted. *See State v. Levesque,* 281 A.2d 570 (Me.1971).

It is true, of course, that the Justice below did not hold any preliminary hearing to determine either (a) the propriety of the photographic lineups[4] or (b)

---

3. This fact was known to defense counsel but this person was not called as a witness by either side.

4. It must be recalled that these lineups *preceded* appellant's arrest.

the independence of the in-court identifications, in accordance with the procedure recommended in *State v. Boyd*, 294 A.2d 459 (Me.1972). However, *Boyd* adopted the rule that *when the defense challenges a prospective in-court identification,* the court should then, outside the presence of the jury, preliminarily determine admissibility. Here, although defense counsel had been made aware of the lineup and had actually seen the six photographs prior to trial, he failed not only to object to the in-court identification but also to challenge it pre-liminarily as having been tainted by the photographic lineup. Thus, the. *Boyd* rule was not violated.

We can find no manifest error, if any error at all, in the record on this point.

The entry is:

Appeal denied.

All Justices concurring.

DELAHANTY, J., did not sit.