### STATE of Maine
### v.
### Barry COLBY.

Supreme Judicial Court of Maine.

July 21, 1976.

---

Robert Stolt, Arthur Stilphen, Asst. Attys. Gen., Augusta, R. John Wuesthoff, Asst. Dist. Atty., Keith Doyon, Law Student, William P. Donahue, Dist. Atty., Alfred, for plaintiff.

Paul H. Elkins, Cape Elizabeth, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

This case is before us on defendant Barry Colby's appeal from a judgment of conviction entered against him upon a jury verdict finding him guilty of cheating by false pretenses.[1] We deny the appeal.

On the evening of March 29, 1974, Linda Rousseau, a cashier at the "First National" supermarket in Biddeford cashed a check for $157.43 for a man who represented himself as the payee, "James Roberts." The drawee bank refused to honor the check and returned it to First National.

Colby was indicted on May 8, 1974 for the offense of cheating by false pretenses in connection with this incident.

At the trial, Miss Rousseau appeared as the State's first witness and identified Colby as the man for whom she had cashed the check. The defendant made no objection to this in-court identification. Subsequently, Miss Rousseau was asked by the State's attorney,

And how did you learn that this man's name was, in fact, Barry Colby?

Before the witness could answer, the defendant's counsel intervened:

Your Honor, I think at this point we are entering into the area of the pre-trial identification. This is most properly direct [sic] with the jury outside of the courtroom.

After the presiding Justice had duly excused the jury, the State's attorney informed the court that, approximately one week after the check had been cashed, Miss Rousseau identified Colby's photograph from an array of photographs of five individuals shown to her by Detective Morin of the Biddeford Police Department. The State's attorney explained that the photographic array had been "disassembled" and was thus not presently available. At this point, the following colloquy ensued between the presiding Justice, the State's attorney, and the defendant's attorney:

THE COURT: And those five pictures, what kind of pictures were they?

[STATE'S ATTORNEY]: They were five pictures, your Honor, of people who were male, caucasian, approximatley [sic] the same age, approximately the same . . .

[DEFENDANT'S ATTORNEY]: Your Honor. Don't. I think with all due respect, without the pictures I don't think this is a proper line.

THE COURT: Well, we haven't got the jury. I am trying to find out whether there is sufficient . . . this witness can sufficiently identify the Defendant. She has already done it. But the question is, was she prompted to do it by some kind of an illegal out of Court identification procedure which is the point you are raising?

1. 17 M.R.S.A. § 1601.

[DEFENDANT'S ATTORNEY]: Yes, your Honor.

The presiding Justice next addressed himself to the witness, Miss Rousseau, in an attempt to enlighten himself as to the circumstances of her out-of-court identification of the defendant's photograph.[2] After Miss Rousseau had testified, the hearing concluded in this manner:

THE COURT: Now you say these pictures are not available?

[STATE'S ATTORNEY]: That is correct, your Honor.

THE COURT: Bring the jury back. They can hear this and decide for themselves whether . . . that offer of proof is sufficient to be submitted to the jury is my ruling. And your objections are noted for the record.

[DEFENDANT'S ATTORNEY]: Thank you, your Honor.

When the jury had returned to the courtroom, first Miss Rousseau and then Detective Morin described the former's out-of-court photographic identification of the defendant. It appears from their testimony that Detective Morin telephoned Miss Rousseau and informed her of his intention to show her pictures of five persons, one of whom was the individual for whom she had cashed the check. When he interviewed her at the First National store, he presented her with a folder containing "mug shots" depicting five male caucasians, all about the same age and with the same color hair. Miss Rousseau recalled that the five men all looked "alike but like each of them had their own features." Detective Morin testified that "they all had a moustache and fit the general description of the suspect." The detective asked Miss Rousseau to "take a look at these mug shots that I have and see if you could identify the guy that did pass the check to you." Without any prompting by the police officer, she unhesitatingly selected the defendant.

Before the jury, Miss Rousseau's position with respect to identification was crystal-clear. She testified that when she made her in-court identification of the defendant, she had not relied on the prior out-of-court photographic identification.[3] She emphasized, in this regard, that when she cashed the check for "James Roberts," she observed him closely for a period of several minutes, and afterward watched

2. THE COURT: Do you recall this? THE WITNESS: Picking out the pictures, you mean? THE COURT: Yes. THE WITNESS: Yes, I do. THE COURT: What kind of pictures were they? How big were they? THE WITNESS: Oh, a little bigger than a wallet size. They was [sic] like two poses of each person. [STATE'S ATTORNEY]: This would have been the size, your Honor. THE COURT: Let's see it. Mug shot, so called. [STATE'S ATTORNEY]: Yes. THE COURT: Something like that? THE WITNESS: Yes. THE COURT: Did you have any difficulty in picking out the Defendant? Were you uncertain? THE WITNESS: No. Because I remember all of the information, all of the lengthy, the time it took to cash the check because I really didn't want to cash it because of the amount of the check.

THE COURT: My question is, when you were shown five pictures, you picked out one? THE WITNESS: Right. THE COURT: You said that was the Defendant. That was the man who presented the check to you. Now did you have any difficulty in selecting the right picture or what you thought was the right picture? THE WITNESS: No. Because I remember what the guy looked like. THE COURT: And you still remember? THE WITNESS: Yes. THE COURT: And you are positive when you say it is the person you pointed out back there? THE WITNESS: Yes, I do.

3. In response to the State's attorney's question, "[A]re you in any way basing your identification of Mr. Colby this morning from the pictures you saw?", Miss Rousseau answered "No."

him as he moved around the store "to make sure he was shopping."

We have quoted extensively from the evidentiary hearing conducted by the court with regard to Miss Rousseau's identification of the defendant because that hearing is central to the issues raised by this appeal. Specifically, the appellant contends that the presiding Justice committed reversible error *first,* by allowing Miss Rousseau's in-court identification of the defendant, and, *second,* by admitting testimony regarding Miss Rousseau's out-of-court photographic identification of the defendant. *Third,* and as a corollary to the two previous arguments, it is asserted that the evidentiary hearing conducted by the court failed to comport with the procedure recommended by this Court in *State v. Boyd,* Me., 294 A.2d 459, 465–66 (1972).

We discuss in turn each of the issues raised by the defendant.

### I.

■ In view of the defendant's failure to make a timely objection to Miss Rousseau's in-court identification of him,[4] our review is restricted to whether the error which he now alleges was a "manifest error of such prejudicial effect as to infringe on appellant's substantial rights." *State v. Chapman,* Me., 358 A.2d 387, 392 M.R.Crim.P. 52(b).

■ An in-court identification of the defendant by a witness should not be allowed

"if such identification is tainted by an impermissibly suggestive pre-trial line-up [or pre-trial photographic] identification *unless the in-court identification has an independent source.*" *State v. Caplan,* Me., 353 A.2d 172, 175 (1976) (bracketed material and emphasis added). *Boyd,* supra, 294 A.2d at 463. Even if we were to accept— which we do not—the appellant's claim that Miss Rousseau's pre-trial photographic identification of him was impermissibly suggestive, the record quite clearly reveals that her in-court identification had an independent source,[5] namely, her rather extensive observation of the defendant at the First National store on the evening that he presented her with the bogus check.[6] *State v. Rowe,* Me., 314 A.2d 407, 415 (1974); *State v. Carlson,* Me., 308 A.2d 294, 297–98 (1973); *State v. Northup,* Me., 303 A.2d 1, 6 (1973).

We conclude that it was not error, let alone manifest error, for the court to allow the in-court identification of the defendant by Miss Rousseau.

### II.

■ The appellant's contention that the court erred by admitting evidence relating to Miss Rousseau's out-of-court photographic identification of him rests entirely on the hypothesis that the *procedure* employed by Detective Morin was so suggestive as to be violative of due process. *Caplan,* supra, 353 A.2d at 175; *Rowe,* supra, 314 A.2d at 411. No other ground has

---

4. We emphasize that it was not until the evidentiary hearing, when the presiding Justice apparently addressed the defendant's attorney and asked, "But the question is, was she prompted to do it by some kind of an illegal out of Court identification procedure which is the point you are raising?", and the defendant's attorney responded, "Yes, your Honor," that the appellant gave even the slightest indication that he had any objection to the in-court identification. This hardly suffices as a timely objection. M.R.Crim.P. 51.

5. Although the presiding Justice did not make an explicit finding that Miss Rousseau's in-

court identification of the defendant had an independent source, the record before us is sufficient for this Court to make a finding of independent source. This being the case, a remand to the trial court for such a determination is not necessary. *State v. Rowe,* Me., 314 A.2d 407, 415 (1974).

6. For an enumeration of some of the factors which are relevant in determining whether an in-court identification is based on an independent source, see *Rowe,* supra n. 5.

been advanced either at trial or on appeal against the admission of this evidence. We have carefully examined all the testimony by Miss Rousseau and Detective Morin bearing on the pre-trial photographic identification and conclude that the defendant's due process rights were not contravened.[7]

The record is clear that, only a week or so after the crime had been committed, Detective Morin showed Miss Rousseau "mug shots" of five men, all of whom bore at least some resemblance to one another. Apparently all of the photographs were of a similar size and shape. While Detective Morin did inform Miss Rousseau that one of the five men depicted was the man for whom she had cashed the check, there is nothing in the record to suggest that Detective Morin in any way prompted her to select Colby's photograph from out of the array. In these circumstances, we can only draw the same conclusion as we did in *Rowe,* supra, 314 A.2d at 412: "Nothing in this procedure was so highly suggestive in character as to subject the witness to the likelihood of making irreparable misidentification."

■ The appellant urges us to find a *prima facie* violation of due process in the fact the photographic array which was shown Miss Rousseau was disassembled and not available at trial. We decline to do so. Although it doubtless would have been preferable for the State to have preserved the photographs for trial, the record contains sufficient information about the pictorial display to satisfy us that it consisted merely of photographs which were "fairly representative of people who might fit the defendant's general description." *Chapman,* supra, 358 A.2d at 392.

The appellant's agument that evidence of the photographic identification should have been excluded on the ground that

the identification procedure was impermissibly suggestive is rejected.

### III.

■ Insofar as the defendant raised no issue below as to the sufficiency of the evidentiary hearing, we limit our inquiry to whether the alleged inadequacy of that proceeding constitutes an "obvious error" affecting "substantial rights" of the defendant. M.R.Crim.P. 52(b).

■ The appellant's claim that the evidentiary hearing was inadequate under the guidelines enunciated in *Boyd,* supra, 294 A.2d at 465–66, must be set in the proper context. In *Boyd,* we recommended that a trial court faced with a defendant's challenge to the admissibility of an in-court identification excuse the jury and conduct an evidentiary hearing to determine the admissibility of such identification. It should go without saying that a preliminary hearing of this nature is not necessary unless the defendant appropriately objects to an in-court identification. *Chapman,* supra, 358 A.2d at 393. In the instant case, as we have seen, the defendant's claim, that the in-court identification of him by Miss Rousseau was based on an allegedly unduly suggestive pre-trial photographic identification of him by the same witness, was not articulated[8] until *after* the in-court identification had been made. Nonetheless, since the hearing conducted by the presiding Justice was rather clearly intended as a *Boyd* hearing, we test it against that standard for the purposes of this discussion.

■ The inquiry in a *Boyd* hearing is whether an in-court identification of the defendant should be ruled inadmissible because it is tainted by an out-of-court identification of the defendant by the same witness which is violative of either due process or the right to counsel. To this end,

7. Although the court made no explicit finding that the out-of-court photographic identification was not impermissibly suggestive, the record is sufficiently detailed to enable us to make such a determination. See n. 5 supra.

8. See n. 4 supra.

the court should take testimony regarding the circumstances of any out-of-court identification. If the presiding Justice concludes, on the basis of the evidence before him, that the out-of-court identification was tainted, he should then decide whether the in-court identification is nevertheless admissible because it is based on an independent source. We cannot emphasize strongly enough that the court should make explicit, on-the-record findings (1) as to the legality of any out-of-court identification, and, assuming that the out-of-court identification is found to be illegal, (2) as to whether the in-court identification has an independent source. See our recent admonition in *Caplan,* supra, 353 A.2d at 175, n. 5.

■ Measuring the evidentiary hearing in this case against the standard of *Boyd,* we find the proceeding deficient in several important particulars. *First,* the court made no explicit finding either with regard to whether the out-of-court photographic identification of Colby by Miss Rousseau was unduly suggestive or whether the witness's in-court identification of the defendant had an independent source. *Second,* although it is a fair inference that the presiding Justice was of the opinion that the out-of-court identification was *not* unduly suggestive, we have considerable doubt that the evidence adduced at the hearing warranted such a conclusion. Miss Rousseau's

testimony at the hearing contains only the barest of details as to the *circumstances* of the photographic identification. Detective Morin did not testify at the hearing, although he was apparently available to do so. Had the State not introduced additional evidence, after the jury had returned, which makes manifest that the pre-trial identification was not impermissibly suggestive, and that, in any event, Miss Rousseau's in-court identification of the defendant was based on an independent source, we would frankly lack a sufficient basis for holding that *either* identification was unexceptionable.

■ We may say, then, that even though the evidentiary hearing was inadequate under *Boyd,* this defect did not affect "substantial rights" of the defendant, M.R.Crim.P. 52(b), because the record in its entirety demonstrates that the in-court identification was not tainted by an impermissibly suggestive out-of-court identification.

The entry is:

Appeal denied.

WEATHERBEE, J., sat at oral argument and participated in conference but died before this opinion was adopted.

All Justices concurring.