STATE of Maine

v.

Alphonse R. BOUCHER.

Supreme Judicial Court of Maine.

Aug. 9, 1977.

David M. Cox, Dist. Atty., John A. Wood-cock, Jr., Asst. Dist. Atty., Bangor, for plaintiff.

Logan & Kurr by John F. Logan, II, Bangor, for defendant.

Before DUFRESNE, C. J., and POMER-OY, WERNICK, ARCHIBALD, DELA-HANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

On September 15, 1975, the defendant appeared in a police lineup and thereafter was arrested on a charge of assault with intent to rape. 17 M.R.S.A. § 3153. He subsequently was indicted therefor and entered a plea of not guilty. Alleging that the pretrial lineup was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," the defendant filed a motion to suppress evidence "relating to any in-court and out-of-court identification." After hearing, the Justice below denied the motion and ultimately a jury returned a guilty verdict from which the defendant has appealed.

We deny the appeal.

## UNNECESSARILY SUGGESTIVE LINEUP

In support of his argument that the pretrial lineup violated due process, the appellant points out that although all descriptions of the victim's assailant depicted him as wearing a moustache, only four members of the six-man lineup had moustaches, of which one was less noticeable than the others. There was also some disparity in the heights of the six persons. Finally, defendant asserts that since there was a *possibility* that the witnesses who identified the accused in the lineup might have discussed the matter among themselves prior to the individual viewings, all evidence resulting from the lineup should have been excluded.

We find no merit in these arguments.

Since *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), a two-part test has been utilized to determine the admissibility of identification evidence.[1] The first inquiry is whether police used an unnecessarily suggestive procedure in obtaining the out-of-court identifications. If so, the second inquiry is whether considering the totality of the circumstances, the suggestive procedure was such as to give rise to a substantial likelihood of misidentification. *Manson v. Braithwaite,* —— U.S. ——, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno, supra. See also State v. Colby,* 361 A.2d 256 (Me.1976); *State v. Caplan,* 353 A.2d 172 (Me.1976).

■ Although the Justice below made no specific finding of fact and merely denied the defendant's motion,[2] we conclude from the record of the hearing that the lineup was not unnecessarily suggestive. To the contrary, we find the police procedure in this case exemplary and, therefore, we describe it in some detail.

There were three ladies who had seen the victim in company with the assailant at a specific locus in Bangor prior to the alleged assault. These three, with the victim, were assembled in a room at the police station and each was given a "ballot" on which each wrote the figures 1 through 6. Next, each lady, individually, was escorted into a room, faced a lineup of six males and, without comment, was allowed time for inspec-

1. The Supreme Court has altered, however, the effect of this test. In *Manson v. Braithwaite,* —— U.S. ——, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Court modified the rule of *Stovall v. Denno, supra,* that required the exclusion of all out-of-court identification evidence whenever police utilized impermissibly suggestive procedures. *Manson* allowed evidence of the out-of-court identification based upon its reliability as measured by the factors of *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

2. Since this case was tried prior to our decision in *State v. Colby,* 361 A.2d 256 (Me.1976), we cannot expect the Justice below to have com-

plied with our most recent statement regarding the conduct of suppression hearings on out-of-court identifications. In *Colby* we emphatically stated that the presiding Justice

"should make explicit, on-the-record findings (1) as to the legality of any out-of-court identification, and, assuming that the out-of-court identification is found to be illegal, (2) as to whether the in-court identification has an independent source."

*State v. Colby, supra* at 262. *See also State v. Caplan,* 353 A.2d 172, 175 (Me.1976).

tion. The numerical position from left to right of the six subjects in the lineup remained constant for each viewing.[3] Each viewer was then escorted to another room, asked to circle the number representing the suspect and sign the "ballot," which was preserved. As each viewing and balloting was completed, the lady was isolated from those who had not yet inspected the lineup. When the viewings were completed, an inspection of the ballots indicated that the four had identified the appellant as the person they had seen with the victim.

Although all the participants in the lineup were distinguishable from each other, this lineup did not have any of the elements that we have previously determined to be "unnecessarily suggestive." We said in *State v. Rowe,* 314 A.2d 407 (Me.1974), that one man showups are inherently suggestive. We have found also that a lineup is very suggestive whenever only the defendant wears a distinctive and significant piece of clothing. *State v. Northup,* 303 A.2d 1 (Me. 1973); *see also State v. Boyd,* 294 A.2d 459 (Me.1972).

■ We do not believe that the failure of all participants in the lineup to resemble each other closely necessarily tended unfairly to single out the defendant. If such were to be the rule, it would be virtually impossible to assemble a properly composed lineup. The defendant was not the sole member of this scenario with significant and distinctive features. All participants bore some resemblance to the defendant in terms of general complexion, color of hair, etc. We find no merit in the argument that because two of the six members in the lineup were without moustaches, witnesses would unfairly single out the defendant. We have previously stated that a three-man lineup *did not* in itself present a question of

unfairness. *State v. Boyd,* 294 A.2d 459 (Me.1972).

The possibility that witnesses *might* have conferred prior to viewing the lineup has not been shown to have prejudiced the defendant. The record shows that the witnesses had not previously seen the lineup nor on that day had they seen any of the members of the lineup until each witness individually was taken to the room in which the lineup was held.

In reviewing this total procedure we find that it was exemplary in almost every aspect. We need not consider, therefore, the second inquiry of whether any suggestive procedure was such as to give rise to a substantial likelihood of misidentification.

## GRUESOME PHOTOGRAPHS

■ The appellant also claims that the Justice below erred in admitting certain photographs. Four of the five photographs objected to by the appellant depict the victim's beaten and swollen face, each from a somewhat different angle. Three of the four photographs were in color. The fifth photograph depicts in black and white a substance on the ground that testimony identified as resembling coagulated blood.

The long standing rule in Maine is that it is within the sound discretion of the trial court to exclude photographs on the basis of unfair prejudice which outweighs probative value.[4] *State v. Bazinet,* 372 A.2d 1036 (Me.1977); *State v. Berube,* 297 A.2d 884, 888 (Me.1972); *State v. Rollins,* 295 A.2d 914, 917 (Me.1972). We do not believe the Justice below abused his discretion.

Although the severity of the injury to the victim is not an element of the offense with which the appellant was charged, the four photographs of the victim did depict the

---

3. We have the benefit of color photographs taken of the lineup by the police. This is another example of the great care the police took in attempting to create a fair identification lineup and to preserve an adequate record thereof.

4. The Maine Rules of Evidence, effective February 2, 1976, have not altered this doctrine. Rule 403 states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

extent of her injury and did have probative value since they corroborate her description of the assault upon her. Likewise, they support the testimony of the lay person who first saw the victim after the assault while she was seeking help.[5]

■ At trial the appellant objected to the admission of the final photograph on the basis of the witness's competency to testify that the matter depicted was blood. The witness's testimony, however, was that the matter "appeared to be blood." Assuming that the witness was not competent to state that the matter was in fact blood, the opinion by the witness was admissible as a short-hand rendering of his perception. *Johnson v. Bangor Railway & Electric Co.,* 125 Me. 88, 92, 131 A. 1, 3 (1925); *Stacy v. Portland Publishing Co.,* 68 Me. 279, 285 (1878).

Certainly this ruling admitting the testimony and the photograph could not be considered as manifest error infringing upon the appellant's substantial rights. *State v. Coulombe,* 373 A.2d 255 (Me.1977); *State v. Chapman,* 358 A.2d 387, 392 (Me.1976).

### NEWSPAPER ARTICLE

■ The publication of a newspaper article reciting the testimony from the first day of trial creates another of appellant's reasons for appeal. After hearing a motion for a mistrial on the basis of this article which was published during the trial, the Justice below, who had read the article, offered to give a curative instruction and interrogate the jurors following the verdict. Appellant argues that the immediate failure of the Justice to interrogate the jurors is reversible error. We find no merit in this argument.

As we stated in *State v. Bazinet,* 372 A.2d 1036, 1039 (Me.1977),

"[t]he fair, efficient and intelligent administration of justice requires that a trial judge be empowered to make a threshold inquiry into whether potential prejudice exists."

*See also Rioux v. Portland Water District,* 132 Me. 307, 170 A. 63 (1934).

Although the Justice below did not expressly find that the newspaper article was not prejudicial, we have the benefit of a complete record which incorporates the article. Since this article fairly and factually recounted the occurrences of the previous day without any attempt to emotionalize or sensationalize the events, we find nothing that would potentially prejudice a jury. The jurors who may have seen it merely read a summary of that which they had already heard. We believe that the Justice below was justified in not interrogating the jury immediately.

"To mandate a voir dire even when the information . . . is in fact plainly innocuous would waste time and insult the intelligence of court, counsel and jurors. Indeed, the unnecessary polling of jurors might give undue emphasis to unimportant matters."

*State v. Bazinet,* 372 A.2d 1036, 1039 (Me. 1977). *See also Gordon v. United States,* 438 F.2d 858, 872 n. 39 (5th Cir. 1971).

### SUFFICIENCY OF THE EVIDENCE

■ The appellant asserted alibi as a defense. Although there were several witnesses who placed the appellant in the company of the complainant during the evening, thus diametrically opposing the testimony of the alibi witnesses, only the complainant could testify to the commission of the criminal acts. The appellant presented three witnesses other than himself who would place him in a vicinity away from the scene at the time the alleged acts occurred. The appellant asserts, therefore, that the

---

**5.** This witness described the victim as follows: "She was all bloody over the face, both hands, over one side of her face and it was a wet night and the combination of blood and mud and rain, I guess."

State failed to prove its case beyond a reasonable doubt.

In this case there was ample evidence that, if believed would have warranted the jury in returning a guilty verdict. The question of sufficiency of evidence is not answered by counting each side's respective witnesses. It was the sole province of the jury to assess the credibility of these opposing witnesses and to resolve any conflicts in their testimony. *State v. Heald and Morton,* 367 A.2d 1372 (Me.1977); *State v. Bonney,* 351 A.2d 107 (Me.1976); *State v. Fournier,* 267 A.2d 638, 641 (Me.1970).

The entry is:

Appeal denied.